IDEAL BASIC INDUSTRIES, Plaintiff,

v.

CLYDESDALE CORP., In Personam, et al., Defendants and Cross-Defendants-Appellees,

v.

MARINE TOWING, INC., Defendant and Cross-Plaintiff-Appellant.

No. 86–3816.

United States Court of Appeals, Fifth Circuit.

Aug. 10, 1987.

Woodley, Barnett, Williams, Fenet, Palmer & Pitre, Clayton Davis, Lake Charles, La., for defendant and cross-plaintiff-appellant.

Phelps, Dunbar, Marks, Claverie & Sims, George M. Gilly, New Orleans, La., for defendants and cross-defendants-appellees.

Before RUBIN, GARZA and JOLLY, Circuit Judges.

PER CURIAM:

For the reasons stated in its opinion, which we adopt and attach hereto, the judgment of the district court is

AFFIRMED.

IDEAL BASIC INDUSTRIES, Plaintiff,

VERSUS

CLYDESDALE CORPORATION, *in personam*, et al., Defendants.

Civ. A. No. 85–2917.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA

James A. Cobb, Jr., Esq. John F. Emmett, Esq. Attorneys for Plaintiff.

George M. Gilly, Esq. Attorney for Defendants Clydesdale Corp. and Spanier Marine Corp.

Clayton Davis, Esq. Attorney for Defendant Marine Towing, Inc.

CASSIBRY, Senior District Judge.

This suit was brought by plaintiff Ideal Basic Industries against defendants Marine Towing Inc., owner and operator of the M/V MOOSE, Clydesdale Corporation and Spanier Marine Corporation, owner and operator respectively of the M/V BELGIAN, for damages to, and cargo loss from, its barges, the H.B. BOLTON and THOMAS B. DOUGLAS, tows of the M/V MOOSE, resulting from a collision of the tows of the M/V MOOSE and M/V BELGIAN at 5:00 A.M. on May 14, 1984 in the area of Mile 104 of the Gulf Intracoastal Waterway near Morgan City, Louisiana.

An agreement has been reached between the owners and operators of the M/V MOOSE and M/V BELGIAN to fund settlement of plaintiff's damage, attorneys' fees and expenses claims, leaving for deci-

sion the issues relating to liability of the M/V MOOSE and M/V BELGIAN for the collision. These issues were tried on September 5, 1986, and the Court now enters its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### 1.

The M/V BELGIAN, official No. 626287, a steel hull, twin screw, 1200 hp. pushboat approximately 70′ by 24′, was eastbound in the waterway with a two-barge tow of flat deck chemical barges. The lead barge was Barge DA 101, measuring 200′ by 50′, aft of which was Barge DA 103, measuring 300′ × 50′. The overall dimensions of the M/V BELGIAN and tow were approximately 575′ in length and 50′ in breadth.

### 2.

The M/V MOOSE, official No. 648881, a steel hull, twin screw, 1000 hp. pushboat approximately 60′ by 24′, was westbound in the waterway with a two-barge tow of cement barges, each measuring 195′ by 35′. The plaintiff's Barge H.B. BOLTON was the lead barge, aft of which was the plaintiff's Barge THOMAS B. DOUGLAS. The overall dimensions of the M/V MOOSE and tow were approximately 450′ in length and 35′ in breadth.

### 3.

The pilot of the M/V BELGIAN was James E. Ainsworth, aged 50 years with approximately 30 years of wheelhouse experience on inland waters, who had served aboard the M/V BELGIAN for several years and who has been appropriately licensed since requirements with respect thereto were enacted in 1972.

### 4.

The pilot of the M/V MOOSE was William F. Hummer, with approximately six years of experience as a tug captain, who received his appropriate licenses in 1978 and 1979, and who had served aboard the M/V MOOSE only a few months prior to the collision.

### 5.

Visibility was limited by a light surface fog to about one-half mile, and there was a westerly current of about 2 knots. As the two vessels approached the Mile 104 area, the eastbound M/V BELGIAN was proceeding about 50 feet off the south bank at a speed of 3 m.p.h. over the ground. The westbound M/V MOOSE was proceeding 20 to 30 feet off the south bank at a speed of 2 or 3 knots.

### 6.

Mr. Ainsworth was made aware of the approaching M/V MOOSE when he was at Mile 106 or 107. He overheard the eastbound Exxon Lake Charles arrange for passage with M/V MOOSE near Mile 99, and the Exxon Lake Charles advised him that the M/V MOOSE was headed his way. At that time he switched his radar from the one-half mile range at which he had been operating to the one-mile range to better detect any vessels approaching around a bend on his port side at Mile 104. His radar showed no vessels around the 104 Mile bend. He then tried to reach the M/V MOOSE by radio and got no response. Five or ten minutes later he made another call and again got no response. In five minutes he was around the bend at Mile 104 and saw an object which he presumed to be the M/V MOOSE about one-half mile ahead.

Because of his failure with the radio previously, he did not use it, but flashed his light and blew one whistle. He saw the M/V MOOSE flash a light and took that to mean that a one-whistle, port to port, passage was agreeable. The M/V MOOSE then came on the radio and asked for a two-whistle, starboard to starboard, passage. He replied to the M/V MOOSE that he could not maneuver for a two-whistle passage and advised it that he would back down.

### 7.

Mr. Hummer had understood a vessel with whom he spoke 10 or 15 minutes before seeing the M/V BELGIAN to tell him

that a vessel was probably 10 miles ahead of him. He was on the south bank and had been looking for four or five miles for a tree to tie up to out of the fog. He first detected the M/V BELGIAN on radar which he was operating at one-half mile range. He saw no lights and heard no whistles before detecting the M/V MOOSE on radar. He radioed for a two-whistle passage because he was apprehensive about a sucking motion that would be created if he veered to the north bank where some barges were tied up. He received a reply from Mr. Ainsworth that a two-whistle passage was impossible for the M/V BELGIAN. He then started backing down and was proceeding almost dead slow at the moment of impact.

### 8.

At the point of collision the waterway was 300 feet or more wide and the channel was 200 to 250 feet wide. The barges tied up on the north bank were approximately 50 feet from the bank.

## CONCLUSIONS OF LAW

### 1.

This is an admiralty and maritime action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction under 28 U.S.C. § 1333 and venue in the Eastern District of Louisiana is proper.

### 2.

Because the collision between the M/V MOOSE and tow and M/V BELGIAN and tow occurred on May 14, 1984 near Mile 104 of the Gulf Intracoastal Waterway, the Inland Navigational Rules Act of 1980, which became effective December 24, 1981, and the Vessel Bridge-to-Bridge Radiotelephone Regulations are applicable.

### 3.

The collision was caused solely by the several acts of negligence and reckless navigation on the part of Mr. Hummer, the pilot of the M/V MOOSE. The actions of Mr. Ainsworth were proper under the circumstances.

### 4.

The custom in this inland waterway was for vessels to pass port-to-port. Although Mr. Hummer knew that this was the custom, he was travelling on his port side of the waterway without taking proper precautions to prevent an emergency situation with an oncoming vessel. Furthermore, the waterway in the area of the collision is properly considered a "narrow channel" within the meaning of Inland Rule 9, which requires that vessels favor their starboard side while proceeding therein.

### 5.

Mr. Hummer's attention was so directed to finding a place to tie up on the south bank that he failed in his duty to properly monitor his radio and thus failed to receive, and to respond to, the several calls of Mr. Ainsworth as Mr. Ainsworth approached the 104 Mile bend. Vessel Bridge-to-Bridge Radiotelephone Regulations, §§ 26.-01–26.06.

### 6.

The current or tide in the area of the collision was so minimal that paragraph (a)(ii) of Rule 9, giving vessels travelling with the current the right-of-way does not apply, and the M/V MOOSE did not have the right-of-way over the M/V BELGIAN. The M/V BELGIAN therefore had no duty to hold up and wait for the oncoming M/V MOOSE to give it passage instructions.

### 7.

Marine Towing, Inc., has not convinced the Court that its several acts and omissions constituting statutory fault could not have caused the collision and have thus not sustained their burden to avoid liability. The Pennsylvania, 86 U.S. 125, 22 L.Ed. 148 (1873).

The Clerk shall enter judgment in favor of defendant Clydesdale Corporation dis-

missing the cross-claim of defendant Marine Enterprises, Inc.

October 15, 1986.